CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JAN 29 2009
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TAMMY J. SHAW, *et al.*, *pro se*,<br>Plaintiffs, | CIVIL NO. 6:08CV00022 |
| v. | MEMORANDUM OPINION |
| LYNCHBURG DEPT. OF SOCIAL SERVICES,<br>*et al.*<br>Defendants. | JUDGE NORMAN K. MOON |

This matter is before the Court on the Federal Rule of Civil Procedure 12(b)(6) motions to dismiss filed by the Lynchburg Department of Social Services ("LDSS"), Eleanor Dunn, Sally Barca, Lisa Parks, and Robert Moore (collectively, the "Lynchburg Defendants") (docket no. 27), Governor Tim Kaine and Attorney General Bob McDonnell (docket no. 7), and Dr. A.J. Anderson (docket no. 11), as well as the motion to quash service filed by the Lynchburg Defendants (docket no. 26) and several miscellaneous motions filed by Shaw (docket nos. 16, 18, 19, 31, 33, 39, 41). Because the Court lacks jurisdiction over Shaw's § 1983 claim under the *Rooker-Feldman* doctrine and because Shaw fails to state a claim under the ADA and the Rehabilitation Act, I will dismiss all counts of Shaw's Amended Complaint in a separate Order to follow. I decline to exercise supplemental jurisdiction over the remaining state law claims. For reasons that will be explained below, I will also deny as moot the motion to quash service filed by the Lynchburg Defendants and deny all of Shaw's miscellaneous motions.

# I. BACKGROUND[1]

Tammy Shaw attempts to state claims on her own behalf, as well as on behalf of her minor children KGS, CAS, and CJS, against the defendants in both their official and individual capacities for the deprivation of due process in violation of 42 U.S.C. § 1983, violations of Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act, and violations of various state laws. These claims arise from actions that were allegedly taken (or not taken) during investigations, determinations, and judicial and administrative hearings concerning child abuse allegations and counter-allegations made between Shaw and her ex-husband, the father of KGS, CAS, and CJS. The investigations and hearings at issue were conducted between 2005 and 2008 in the Juvenile and Domestic Relations Court ("JDR Court") for the City of Lynchburg, the JDR Court and Circuit Court for the County of Amherst, and before the Virginia Department of Social Services. Aside from Governor Kaine and Attorney General McDonnell, the majority of the individual defendants are employees of the City of Lynchburg. Sally Barca is a caseworker with LDSS. Lisa Parks is also a caseworker and is Barca's direct supervisor at LDSS. Robert Moore is an investigator with the Lynchburg Police Department who works with LDSS. Eleanor Dunn is a deputy city attorney who represents LDSS on the City's behalf. Dr. A.J. Anderson is a licensed clinical psychologist. While Dr. Anderson is not employed by the City of Lynchburg, he conducted court-ordered psychological evaluations of Plaintiff's children in March 2006.

The thrust of Shaw's rather prolix Amended Complaint is that several of the defendants violated her and/or her children's constitutional and statutory rights by suppressing credible evidence of physical and sexual abuse of Shaw's children by their father, providing misleading

---

[1] Except where otherwise noted, the facts recited here are derived from the Amended Complaint. As required in the analysis of dismissal motions, these facts are assumed to be true for purposes of the motions. *See, e.g., Edwards*

2

or false testimony at various custody hearings, and creating a false perception that Shaw's children were suffering from "parental alienation syndrome"[2] as a result of Shaw's actions. Shaw claims that the alleged actions by the defendants resulted in the destruction of her credibility and the ultimate abrogation of at least some of her custody rights over the children.[3] Shaw also claims that Moore and Barca failed to provide the assistance of a qualified speech therapist for CJS, who suffers from a speech handicap, during an interview concerning allegations of sexual abuse against the child's father in April 2007.

Shaw filed the instant lawsuit on July 28, 2008, seeking redress under 42 U.S.C. § 1983 for the defendants' alleged violation of her and her children's liberty interests under the Fourteenth Amendment, and under Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act for the alleged failure to properly accommodate CJS.[4] Shaw also asserts Virginia state law claims against all of the defendants for violations of the Virginia Constitution and various sections of the Virginia Code, against Dr. Anderson for malpractice, and against Dunn for violations of disciplinary rules governing attorney conduct.

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule

---

*v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

[2] "The parental alienation syndrome is a disorder that arises primarily in the context of child-custody disputes. Its primary manifestation is the child's campaign of denigration against a parent, a campaign that has no justification. It results from the combination of a programming (brainwashing) parent's indoctrinations and the child's own contributions to the vilification of the target parent." R.A. Gardner, The Parental Alienation Syndrome (2d ed. 1998).

[3] It appears that Shaw is alleging that, as a result of the defendants' efforts, a protective order was entered against her in Amherst JDR Court on June 15, 2006 and that Shaw's ex-husband was awarded at least partial custody rights over the children in Amherst Circuit Court in September 2008.

[4] Shaw's Amended Complaint is ninety-six pages long and contains twenty-four different "counts." Many of the "counts," however, address the same conduct and allege violations of the same laws. I will address each potential legal claim identified, along with the alleged conduct that might be relevant to each claim. Instead of disposing of

3

12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (alteration in original omitted) (citations omitted) (internal quotation marks omitted). Instead, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"; plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Id.* at 1974. As the Fourth Circuit has held, a plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006).

Because pro se complaints "represent the work of an untutored hand requiring special judicial solicitude," courts must construe them liberally. *Baudette v. City of Hampton*, 775 F.2d 1274, 1277–1278 (4th Cir. 1985). Dismissal of a pro se complaint is thus only appropriate when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (internal quotations omitted). Courts need not, however, "conjure up questions never squarely presented to them. . . . Even in the case of pro se litigants, they cannot be expected to construct full blown claims from

---

individual "counts," I will dispose of the individual legal claims identified in the Amended Complaint.

sentence fragments." *Id.* at 1278. The requirement of liberal construction does not mean that courts can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. *See Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.1990).

### III. DISCUSSION

Even when analyzed under the liberal pro se standard of review for motions to dismiss, the Amended Complaint fails to state any claims for which relief may be granted. As the following sections will explain, the Court lacks jurisdiction over the § 1983 claim under the *Rooker-Feldman* doctrine, and the ADA and Rehabilitation Act claims fail because Shaw is prohibited from litigating them pro se on her children's behalf.

#### A. *ROOKER-FELDMAN* DOCTRINE

Although none of the parties address the *Rooker-Feldman* doctrine with any specificity in their briefs, it may be raised by the Court *sua sponte* before considering the merits of a claim because it is a jurisdictional doctrine. *See Friedman's Inc. v. Dunlap,* 290 F.3d 191, 195 (4th Cir. 2002); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."). The *Rooker-Feldman* doctrine prohibits "lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). Accordingly, when the success of a federal claim depends upon a determination "that the state court wrongly decided the issues before it," a federal court lacks jurisdiction to entertain its merits. *See Wilmore*, 407 F.3d at 279 (citing *Brown & Root v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (citations omitted)). The doctrine ensures that federal district courts exercise only original jurisdiction and guarantees that review of state court

5

judgments is conducted at the federal level only by the U.S. Supreme Court, as Congress intended. *See Brown & Root, Inc.*, 211 F.3d at 198-99.

Shaw's § 1983 claim is barred from consideration by the *Rooker-Feldman* doctrine because it is "inextricably intertwined" with issues that were already considered and decided in custody hearings by several state courts, particularly the Amherst County JDR Court and Circuit Court. These issues include, but are not necessarily limited to, allegations that LDSS and its caseworkers failed to properly follow up on various allegations of physical and sexual abuse lodged by Shaw against her children's father, that Barca worked with Dr. Anderson to compile evidence of parental alienation by Shaw, and that Barca and Dr. Anderson provided false or misleading statements in custody hearings. While Shaw attempts to re-hash these issues in federal court, the state courts already considered these issues and weighed the evidence presented by the defendants in the various custody hearings. This Court may not re-weigh the evidence and the credibility of witnesses that were before the state courts in the various custody proceedings. Recognizing that Shaw's due process rights were violated in light of the defendants' alleged misconduct would require a determination that one or all of the state courts wrongly decided the issues before them. This Court is prohibited from making such a determination.

Numerous other courts have applied the *Rooker-Feldman* doctrine in cases similar to Shaw's where a parent claims that the state court decision was unconstitutional or was premised upon constitutional violations by agents of the state. *See, e.g, Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005); *Simmons v. Huff*, 70 Fed. Appx. 136 (E.D. Va. 2003); *Duby v. Morgan*, 901 F. Supp. 215, 216 (S.D. W.Va. 1995). If Shaw wishes to address the alleged violations of due process that occurred in conjunction with the state court proceedings, she may not lodge a collateral attack in federal court; she must instead seek recourse in the state

6

court system. *See Feldman*, 460 U.S. at 482; *Anderson v. Colorado*, 793 F.2d 262, 263 (10th Cir. 1986) ("Where a constitutional issue could have been reviewed on direct appeal by the state appellate courts, a litigant may not seek to reverse or modify the state court judgment by bringing a constitutional claim under 42 U.S.C. § 1983."). Because the Court lacks jurisdiction to entertain Shaw's § 1983 claim under *Rooker-Feldman* doctrine, it must be dismissed. It is unnecessary to pass on the merits of the claim or any deficiencies in the claim that were presented by the defendants in the motions to dismiss.

### B. SECTION 504 OF THE REHABILITATION ACT AND TITLE II OF THE ADA

Shaw also attempts to bring claims on behalf of her minor child CJS under § 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act (ADA). The factual basis of both of these claims is that Barca and Moore failed to properly accommodate CJS in an April 2007 interview concerning allegations of sexual abuse against the child's father. Shaw claims that Moore and Barca should have obtained the assistance of a qualified speech therapist to assist with the interview because CJS has a severe speech handicap that renders her unable to communicate effectively.

These claims, unlike Shaw's § 1983 claim, are not categorically barred from consideration under the *Rooker-Feldman* doctrine. It does not appear that the allegations that Shaw lodges on CJS's behalf are "inextricably intertwined" with issues that were raised and considered in the state court custody proceedings, or that rendering judgment in Shaw's favor on these claims would require a determination that the state courts wrongly decided the issues before them. In other words, this Court could find that CJS's rights were violated under the ADA and the Rehabilitation Act without re-weighing the evidence and the credibility of witnesses that were before the state courts in the various custody proceedings and without implying that any of the state court judgments abrogating Shaw's custody rights were wrongly decided.

7

Regardless, these claims fail because Shaw is prohibited from litigating them pro se on CJS's behalf. It is well-settled that, absent unique circumstances, a parent may not litigate a claim pro se on behalf of her children. *Myers v. Loudon County Public Schools*, 418 F.3d 395, 401 (4th Cir. 2005) ("non-attorney parents generally may not litigate the claims of their minor children in federal court."); *see also Gallo v. United States*, 331 F. Supp. 2d 446, 447 (E.D. Va. 2004) (noting that "courts are nearly unanimous in holding that a parent or guardian cannot sue on behalf of a child without securing counsel.").[5] "The right to litigate for *oneself*...does not create a coordinate right to litigate for *others*." *Myers*, 418 F.3d at 400 (emphasis in original). By permitting the layman to litigate only for himself, this restriction protects the rights of those before the court while also safeguarding the court and the pro se litigant's adversaries "from poorly drafted, inarticulate, and vexatious claims." *Id.* (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 231 (3d Cir. 1998). Because any alleged actions by Barca or Moore would be violations of CJS's (not Shaw's) rights under the Rehabilitation Act and the ADA, Shaw lacks standing to litigate these claims pro se on CJS's behalf.[6] The claims must be dismissed.

C. STATE LAW CLAIMS

The Amended Complaint contains claims against all of the defendants for violations of the Virginia Constitution and numerous sections of the Virginia Code, against Dr. Anderson for

---

[5] Courts have allowed parents to litigate pro se on behalf of their children in the special context of appeals of administrative denials of social security income (SSI) benefits. *See, e.g., Machadio v. Apfel*, 276 F.3d 103, 106 (2d Cir. 2002); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). In *Myers*, the Fourth Circuit noted that parents might be permitted to litigate their children's claims in the context of an SSI appeal because of "the unique policy considerations involved in such cases." *Myers*, 418 F.3d at 401, n. 7. Such unique considerations are not present in this case and I decline to broaden the exception to the general rule prohibiting parents from litigating their children's claims pro se.

[6] For similar reasons, Shaw's "motion for joinder of the real parties in interest" should be denied. In the motion, Shaw asks the Court to join her children as plaintiffs in the case pursuant to Federal Rule of Civil Procedure 17(a)(3). Regardless of whether Shaw's children were properly joined as plaintiffs in this case, however, the Rehabilitation Act and the ADA claims would fail because Shaw is prohibited from litigating those claims pro se on her children's behalf.

malpractice, and against Dunn for violations of disciplinary rules governing attorney conduct. A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367. Because all of the federal claims over which this Court has original jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Shaw's various state law claims.

### D. MISCELLANEOUS MOTIONS

In addition to the motions to dismiss, several other motions are ripe for decision. The first concerns the manner in which Shaw attempted to serve the Lynchburg Defendants. After filing the Amended Complaint, Shaw left a copy of it and the summons with individuals who sat at the front desks of the office buildings where each of the Lynchburg Defendants worked (Barca and Parks at the front desk of LDSS, Dunn at the front desk of Lynchburg City Hall, and Moore at the front desk of the Lynchburg Police Station). Because the Lynchburg Defendants believed that Shaw did not accomplish proper service under Federal Rule of Civil Procedure 4(e), they did not respond to the Amended Complaint within the twenty-day deadline set forth in the summons. On January 2, 2009, Shaw filed a "motion for summary judgment," requesting that the Court enter default judgment in her favour against the Lynchburg Defendants in light of their failure to respond to the Amended Complaint. On January 7, 2009, the Lynchburg Defendants filed a motion to quash service, which explained that they did not respond to the Amended Complaint because service was insufficient under Rule 4(e). Because this case must be dismissed for the reasons already stated, however, I decline to address the issue of whether the Lynchburg Defendants were properly served under Rule 4(e). The motion to quash service is therefore moot and should be denied.[7] For the same reason, default judgment in Shaw's favour would be

---

[7] For the same reasons, Shaw's motion for miscellaneous relief (docket no. 41) should also be denied.

9

inappropriate under these circumstances, and her "motion for summary judgment" should be denied.

Finally, Shaw also filed a motion requesting that the Court enter an order requiring Alexander Bell, counsel for the Lynchburg Defendants, to withdraw from this case on the grounds that he is not authorized to appear as "special counsel" under Virginia Code § 2.2-507 and -510. Because this case should be dismissed for the jurisdictional and substantive reasons already discussed and because the deficiencies in Shaw's pleadings are apparent on their face irrespective of any filings that were made by the Lynchburg Defendants, Shaw's motion to have Bell withdrawn as counsel is moot and should be denied.

## IV. CONCLUSION

The Amended Complaint must be dismissed because the Court lacks jurisdiction to entertain Shaw's § 1983 claim and because Shaw may not litigate the ADA and Rehabilitation Act claims pro se on her children's behalf. I decline to exercise supplemental jurisdiction over the remaining state law claims. I will grant the defendants' motions to dismiss in a separate Order to follow.[8] The remainder of outstanding motions will be denied. The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to Shaw.

Entered this 29th day of January, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[8] Counsel for Kaine and McDonnell scheduled a hearing on the motions to dismiss for March 13, 2009. In the interest of efficiency, I will decline to hold a hearing on any of these motions. The facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

10